Bruce G. SMITH, Appellant,

v.

HERCO, INC. and Shearer Engineering, Inc., Appellees.

No. 13–93–410–CV.

Court of Appeals of Texas, Corpus Christi.

May 4, 1995.

Fred D. Dreiling, Corpus Christi, for appellant.

Stephen Burkett, Patrick L. Beam, Burkett & Beam, Corpus Christi, Pat Morris, Nicolas, Morris & Barrow, Corpus Christi, for appellees.

Before KENNEDY[1], FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

YAÑEZ, Justice.

Upon consideration of the appellant's motion for rehearing filed in this case, we grant the motion, withdraw our prior opinion rendered March 16, 1995, and substitute the following opinion and judgment in its place.

Bruce Smith appeals from a judgment rendered in his favor. He contends that the trial court erred by not awarding him the largest sum of damages under the jury's verdict. By cross-points, Shearer Engineering contends that the trial court erred by ordering it to indemnify the Hershey Corporation (Herco) for any sum it pays to Smith. We affirm in part, modify in part, and reverse and render in part the trial court's judgment.

### Facts

In April 1985, Bruce Smith sought to purchase a townhouse in Corpus Christi from Herco, specifically, unit 13 of the Brandywine Townhomes. Smith met Robert Early, Herco's agent, at the townhouse. Though Early could not remember the specifics of their conversation, he recalled that he showed Smith the interior of unit 13 and told Smith that it was for sale. The two discussed what Smith would be purchasing if he bought the townhouse. Early told Smith that he would be deeded the inside of unit 13, which consisted of the interior living area to halfway into the walls. Early also informed Smith that there was a townhome association which included the individual owners and that each owner paid monthly dues for sewage, garbage pickup, and maintenance of the common areas. Early explained that the common areas were owned by all of the unit owners. After negotiating price, Smith agreed to pay Herco $64,000 for unit 13. By contract, Herco represented that it would sell Smith unit 13 and deliver a general warranty deed conveying title. Smith arranged financing with Lomas and Nettleton Mortgage Company and became obligated to them for monthly mortgage payments. On June 3, 1985, Herco delivered to Smith a Warranty Deed with a Vendor's Lien conveying good title, along with Herco's written promise to defend title.

At closing, Shearer Engineering Inc., a survey company, provided Smith with a survey. On the survey was a seal indicating that it had been prepared by Harold Shearer, a registered public surveyor. The survey contained a written assurance by Shearer that "a survey had been made on the ground, that the plan was true and correct, and that there were no encroachments." Smith moved into his townhouse.

In September 1986, Smith's employer offered him a transfer to Houston. The company had a program whereby it would relieve Smith of his remaining $63,000 debt to Lomas and Nettleton by paying off Smith's mortgage or making monthly payments until it sold the townhouse. The company would pay all closing costs and any loss caused by Smith's negative equity.

The company sent a property appraiser to Smith's townhouse on October 14, 1986, where he met with Smith who gave him a copy of Shearer's May 31, 1985 survey. The company's appraiser discovered a discrepancy between his own diagram and measurements of unit 13, and the Shearer survey.

1. Former Justice Noah Kennedy not participating.

He discovered that the Shearer survey failed to show that the northeast corner of unit 13 extended approximately four feet over the building line into the development's common area. Shearer was called to prepare a corrected survey which it did on October 31, 1986. After Shearer met with the company's surveyor, Shearer issued a revised survey dated November 14, 1986, which revealed that the northeast corner of unit 13 encroached onto the common areas of the development.

The company appraised the property at $62,500 conditioned upon a waiver by all of the owners of the property upon which the encroachment occurred. The company appraiser testified that, because of the encroachment, there was no longer fee simple ownership. The company appraiser testified that the encroachment impacts the market value because the owner cannot transfer his property free and clear.

The company told Smith that to sell the townhouse and convey clear title, all of the unit owners and their mortgage companies in the development would have to sign a deed conveying that portion of unit 13 that encroached onto the common area to Smith. It was up to Smith to obtain all of the property owners' signatures. Smith accepted his job transfer, moved to Houston, and attempted to obtain all of the necessary signatures by phone from November 1986 until February 1987. He was unsuccessful, and in March 1987, his employer temporarily transferred him back to Corpus Christi to work on a special project. During his evenings and weekends, he continued to attempt to obtain the signatures of the other owners. Smith's special project assignment ended June 1, 1987. Smith could not afford to live in Houston and continue making the mortgage payments on the townhouse in Corpus Christi. In June, Smith stopped making mortgage payments. On two occasions, Smith notified Herco that it had sold him a townhouse that was located on common property. The mortgage company foreclosed on the property.

**Procedural History**

Smith sued Herco and Shearer. Against Herco, Smith alleged Deceptive Trade Practices Act (DTPA) violations, a breach of contract, and a breach of expressed and implied warranties. Against Shearer, Smith alleged that Shearer violated the DTPA by misrepresenting unit 13 in its May 31, 1985 survey of Smith's townhouse and that it was negligent in conducting the survey. Smith sued Shearer by his first amended original petition filed February 9, 1989. Shearer answered the lawsuit and raised the affirmative defense of limitations. Specifically, Shearer contended that more than two years had passed since Smith discovered the mistake in the survey and that, under Texas Business and Commerce Code section 17.565, any cause of action by Smith or any cross-action for indemnity and contribution by Herco under the DTPA was barred.

Herco filed a cross-claim against Shearer Engineering for contribution for any liability that may be found to exist against Herco as a result of Smith's suit. Herco alleged negligence and breach of warranty for failing to complete the survey in keeping with professional standards. Additionally, Herco filed a supplemental answer and cross-action to all pleadings and pleaded fraud and illegality.

The trial court submitted thirty questions to the jury asking fact questions related to DTPA, breach of warranty, and negligence claims. Following a favorable verdict, the trial court entered judgment in Smith's favor. Based upon the jury's answers to the charge, the trial court ordered that Smith recover $32,000 from Herco as actual damages under Smith's cause of action for its failure to deliver good and marketable title to unit 13 and for breach of its covenant of a good right to convey the property. The trial court specifically found and concluded that Smith was not entitled to prejudgment interest and denied Smith's request. The trial court ordered that Smith recover $10,720 from Herco as attorney's fees. Additionally, the trial court ordered that Smith recover post judgment interest. Regarding the cause of action brought by Herco against Shearer, the trial court's order recites that "it appearing to the Court that said conduct constituted fraud is of the opinion that Herco should make payments to Smith and that Herco should have and recover complete indemnity from Shear-

er." Smith appeals and Shearer brings cross-points.

## Smith v. Shearer

At trial, by question 17, the jury was asked by what date Smith should have discovered the error in the May 31, 1985 survey. The jury answered that Smith should have learned about it by October 14, 1986. This jury answer is unchallenged.

By point of error four, Smith contends that the trial court erred by overruling his first amended motion for judgment on the verdict and erred by failing to award him judgment based on his DTPA theory Smith argues that, because the evidence was legally and factually sufficient to support the jury's findings that Shearer engaged in false misleading or deceptive acts or practices that were a producing cause of his damages.

Shearer responds that the two-year DTPA limitation provision bars Smith's DTPA claim against it and that the trial court was correct in not rendering judgment in favor of Smith on his DTPA claim against Shearer. *See* Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987).[2]

Smith counters Shearer's argument asserting that his DTPA action is not time-barred because the applicable limitation provision is the ten-year Surveyors' limitation. *See* Tex. Civ.Prac. & Rem.Code Ann. § 16.011 (Vernon Supp.1994).[3]

■ In construing the statutes of limitations, we hold that Business and Commerce Code section 17.565 applies to Smith's DTPA claim against Shearer. A plaintiff's rights under the DTPA arise solely from statute. "When a cause of action and remedy for its enforcement are derived not from the common law but from [a] statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Lochabay v. Southwestern Bell Media, Inc.,* 828 S.W.2d 167, 170 (Tex.App.—Austin 1992, no writ) (citing *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926)). The DTPA limitation provision specifically states that, if one is seeking relief "under this subchapter," one must do so within two years. Thus, Smith's DTPA claim against Shearer is barred because he asserted it more than two years after October 14, 1986, the date the jury determined that Smith should have discovered the survey error.

Therefore, despite the jury's determination that Shearer committed false misleading or deceptive acts or practices, that were a producing cause of Smith's damages, we hold that his DTPA claim was barred as a matter of law. We overrule Smith's point of error four.

## Smith v. Herco

By points one, two, and three, Smith contends that the trial court erred by overruling his motion for judgment and by failing to award him damages under his DTPA theory. Smith contends that he would have recovered a larger sum of damages under his DTPA theory than what the court awarded him under his breach of warranty theory.

The difference in a damage recovery under the DTPA, argues Smith, is that if the trial court had awarded damages under his DTPA theory, he could recover an additional $57,-600 which the jury found to be his damage to his credit. Smith asserts that sufficient evidence exists to support the award of $57,600 for damage to his credit.

■ When we review a "no evidence" or legal sufficiency of the evidence point, we consider only the evidence and reasonable

2. All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.

3. A person must bring suit for damages arising from an injury or loss caused by an error in a survey conducted by a registered public surveyor or a licensed state land surveyor: ...

(2) not later than September 1, 1991, or 10 years after the date the survey was completed, whichever is later, if the survey was completed before September 1, 1989.

inferences that tend to support the jury's finding, and we disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). We overrule the point and uphold the finding if we find any evidence to support the finding. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

When we review an "insufficient evidence" or factual sufficiency of the evidence point, we consider, weigh and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Initially, we address point five, by which Smith contends that the trial court erred by failing to award damages under his DTPA theory because the evidence was legally and factually sufficient to support the jury's finding that Smith sustained a $57,600 loss of credit and a $32,000 out-of-pocket or benefit-of-the-bargain loss.

We note that the jury found $32,000 as the amount of damages Smith incurred under both a DTPA and a breach of covenant to convey good and marketable title. Under Smith's DTPA claim, the jury also found that Smith had incurred damage to his credit in the amount of $57,600. Therefore, the only additional damages Smith would recover under his DTPA theory than what the court ordered in its judgment would be the $57,600 damage the jury found he suffered to his credit.

At trial, Smith asserted that Herco violated DTPA section 17.46(b)(5), (7) and (12) by having made several representations,[4] Smith testified that Robert Early, Herco's real es-

tate agent in Corpus Christi, told Smith that what would be deeded to him would be the interior of unit 13 from wall to wall. Early told Smith that an owner would basically own the inside of the walls. Early explained to Smith that all of the unit owners had an undivided one half interest in the common areas, and that inside the walls halfway to your neighbors' walls and midway through the walls would be deeded to him. Early stated that he showed Smith the interior of unit 13, and that any prospective buyer would expect that he would be buying the entire townhouse. Smith contends that Herco made written representations as well. Smith contends that by the earnest money contract, Herco expressly represented that it was agreeing to sell Smith unit 13. Smith also contends that Herco made another written affirmative representation when it promised to deliver Smith a "general warranty deed conveying title to the property." At closing, Herco formally conveyed unit 13 to Smith and represented in the deed that it would defend Smith's title against all comers.

To prevail under the DTPA, a plaintiff must establish that he is a consumer, that the act complained about is a producing cause of damages, and that the act was one prohibited by section 17.50(a)(1–4). *Lochabay*, 828 S.W.2d at 170.

By points one and two, Smith contends that the trial court erred by not rendering judgment in his favor based upon his DTPA cause of action because the evidence is legally and factually sufficient to support the jury's finding that he was a "consumer."

A consumer is an individual who seeks or acquires by purchase or lease, any goods or services. Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). A plaintiff must meet two tests to qualify as a consumer: 1) the person must have sought or acquired goods or services by purchase or lease, and 2) the goods or services purchased or leased must form the basis of the com-

---

4. These alleged DTPA violations are as follows: (b)(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (b)(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (b)(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

plaint. *Lochabay,* 828 S.W.2d at 171 (citing *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981)). The evidence shows that Smith is a consumer. Additionally, we note that Herco in its brief to this court states that it does not deny Smith's consumer status. We conclude that Smith was a consumer under the DTPA.

The fact that a plaintiff establishes his status as a consumer under the DTPA does not lead to the conclusion that he is entitled to recovery under the statute. By point three, Smith contends that the trial court erred by failing to enter judgment in his favor on his DTPA theory (which he asserts would have provided a greater amount of damage recovery) because the evidence was legally and factually sufficient to support the jury's findings that Herco violated the DTPA which was a producing cause of his damages.

■■■■ Central to our consideration is Herco's duty to be certain that its agent's affirmative statements are true. *Camden Mach. & Tool, Inc. v. Cascade,* 870 S.W.2d 304, 311 (Tex.App.—Fort Worth 1993, no writ). When a seller makes an affirmative representation, the law imposes a duty to know whether that statement is true. *Id.* (citing *First Title Co. of Waco v. Garrett,* 860 S.W.2d 74, 76 (Tex.1993)). A seller is liable under the DTPA for affirmative misrepresentations, notwithstanding the lack of notice or falsity. *Id.* (citing *Henry S. Miller Co. v. Bynum,* 797 S.W.2d 51, 55 (Tex.App.—Houston [1st Dist.] 1990), *aff'd,* 836 S.W.2d 160 (Tex.1992)); *see also Cameron v. Terrell & Garrett, Inc.,* 599 S.W.2d 680, 682–83 (Tex. Civ.App.—Fort Worth 1980), *rev'd,* 618 S.W.2d 535 (Tex.1981) (defendants listed home for sale stating it had 2400 square feet of heated and air conditioned space, jury determined that defendants misrepresented the square footage; trial and appellate courts held no DTPA violation because no evidence putting them on notice that information supplied by seller was false or that they undertook to verify accuracy of seller's representation; supreme court reversed and concluded defendants were liable for affirmative misstatements of fact). In the context of a seller and buyer, this principle requires that a seller be held responsible for an affirmative

representation that is the "producing cause" of damages to the party purchasing the goods. Tex.Bus. & Com.Code Ann. § 17.50(a); *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). Intent to misrepresent, or knowledge that a representation is untrue, has never been an element of a DTPA "laundry list" claim unless the specific provision requires intent. *Pennington v. Singleton,* 606 S.W.2d 682, 690 (Tex.1980). Herco contends that it is not liable under the DTPA. Herco argues that there exists a distinction between misrepresentations and a failure to disclose information and that one cannot be held liable under the DTPA for failure to disclose facts about which one does not know. *See Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982). No duty to know the facts are true arises when the seller does not make representations, but merely fails to reveal information about which he does not know. *Id.* Herco argues that this is the situation under the facts before us. Herco argues that it failed to reveal information about which it did not know, (that the interior of Unit 13 encroached onto the common area of the townhome development) and, therefore, it cannot be liable under the DTPA. We disagree.

■■■■ This is not a case in which Herco simply failed to disclose that unit 13 encroached on the common area. Instead, Herco made affirmative oral and written representations that it would sell, deed, and give title to Smith to all of unit 13. Herco represented to Smith that he would own all of the interior of unit 13. This representation was false. Herco had the duty to know if the representations made were true. "Regardless of the reason, when a good does not have the characteristics it is represented to have, or perform as represented, the injury to the consumer is the same. There is no justification for excluding some misrepresentations and including others in the basis of the reason for their falsity." *Pennington,* 606 S.W.2d at 687.

In reviewing the evidence, we conclude that it is legally and factually sufficient to support the jury's answer to question two by which it found that Herco violated the plead-

ed provisions of the DTPA. We sustain point of error three.

■ Recovery for damages under the DTPA in real estate may be found under direct economic loss and or consequential economic loss. The direct economic loss at common law is the out of pocket expenses where, in Texas, the statutory measure is benefit of the bargain. *Odom v. Meraz*, 810 S.W.2d 241, 244 (Tex.App.—El Paso 1991) (citing Tex.Bus. & Com.Code Ann. § 27.01 (Vernon 1987)).

■ The out-of-pocket measure of damages is the difference between the value of that with which the plaintiff parted and the value of that which the plaintiff received at the time of the transaction. The benefit of the bargain measure of damages is the difference between the value represented and the value actually received. The DTPA allows recovery of damages either for the out-of-pocket or the benefit of the bargain, whichever is greater. *Id.* (quoting *W.O. Bankston Nissan, Inc. v. Walters*, 754 S.W.2d 127, 128 (Tex.1988)).

■ The jury was asked specifically about both measures of damages and answered $32,000 for both. The evidence shows that Herco and Smith negotiated a price for Unit 13 of $64,000. Chris Nicholson was qualified as an expert to express his opinion about the value of the unit as of June 1985. His opinion was that the fair market value of the property without the encroachment was $64,000 and with the encroachment was $32,000. Sufficient evidence exists to support the jury's finding that Smith incurred a $32,000 out-of-pocket loss.

■ A consumer who prevails in a DTPA action is entitled to actual damages found by the trier of fact. Tex.Bus. & Com. Code Ann. § 17.50(a) & (b) (Vernon 1987 & Supp.1994). Actual damages, though not defined in the DTPA, has been construed to mean common law damages. *Odom*, 810 S.W.2d at 244 (citing *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.1980)). The object of awarding a plaintiff recovery is to compensate for the actual loss sustained as a result of the defendant's conduct. *Kish v. Van Note*, 692 S.W.2d 463,

466 (Tex.1985). The amount of actual damages recoverable under the DTPA is determined by the total loss sustained as a result of the deceptive trade practice. *Odom*, 810 S.W.2d at 244. The DTPA allows recovery for the greatest amount of actual damages alleged and factually established to have been caused by the deceptive practice. *Id.* (citing *Kish*, 692 S.W.2d at 466).

In response to Smith's claim that the trial court erred by not awarding Smith $57,600 for loss of credit resulting from the sale of unit 13, Herco asserts that no evidence supports such a claim and that the trial court's damage award of $32,000 was proper.

■ Loss of credit is recoverable as actual damages in a suit when damage to one's credit was the necessary and usual result of the defendant's actions. *Automobile Ins. Co. v. Davila*, 805 S.W.2d 897, 908 (Tex.App.—Corpus Christi 1991, writ denied) (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 688 (Tex.1981)). The amount of loss of credit damages must only be established with the degree of certainty to which it is susceptible. *Davila*, 805 S.W.2d at 908.

Smith testified at trial regarding his credit status after the mortgage company foreclosed on unit 13. Smith had a Sears credit card and a Visa card prior to the foreclosure. After the foreclosure, while Smith did not lose his credit card privileges with these two companies, he was denied any increase in his credit limit. Milton Ecker, a retired Lomas and Nettleton attorney, and an expert in the mortgage and title business, provided additional testimony about damage to one's credit rating following a foreclosure. He testified that Smith's mortgage delinquency would have been reported to a credit bureau within ninety days. Ecker also testified that the foreclosure would have been reported to the credit bureau. He explained that a person's creditworthiness is "absolutely destroyed" by a mortgage delinquency or foreclosure insofar as banks, mortgage companies, the FHA or VA are concerned.

■ Based upon this testimony, we conclude that the jury could infer that Smith suffered damage to his credit. We conclude sufficient evidence exists to support the

jury's finding that Smith sustained damage to his credit in the sum of $57,600. We sustain the portion of point of error five by which Smith complains that the trial court failed to award him damages related to his loss of credit.

Smith also argues that, in the event his breach of warranty claims render damages greater than those recoverable under his DTPA theory, he should recover a greater sum of damages under his breach of warranty claim. Smith, by points eight, nine, and ten, contends that the trial court used the wrong measure of damages for his breach of warranty claim in its judgment. Smith contends that the trial court should have entered a damage award in the amount of $64,000, the amount of consideration Smith paid for unit 13, rather than the amount awarded, $32,000.

Smith argues that the proper measure of damages is the entire purchase price because, when a contract to convey land fails because of the inability of the vendor to deliver good title, the measure of damage which the vendee may recover for a breach of the contract is the amount he has paid as purchase money, and not the loss of his bargain. *Ryan Mortgage Investors v. Fleming-Wood*, 650 S.W.2d 928, 935 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Long v. Brown*, 593 S.W.2d 371 (Tex.App.—Dallas 1979, writ ref'd n.r.e.).

The measure of damages for breach of contract to sell real estate is the difference between the contract price and the market value of the property at the time of the breach. *Ryan Mortgage Investors*, 650 S.W.2d at 935. In answering question four, the jury found that the difference in the market values with the encroachment was $32,000. This was the proper measure of damages under the facts of this case.

In *Long* and *Ryan Mortgage*, the seller had absolutely no title to pass. As a result, no consummation of the contract ever occurred. In those cases, the court limited recovery to what was paid, such as the amount of money placed into the escrow account. In this case, the title passed to the buyer, thus, the court entered the proper

amount of damages. We overrule points eight, nine, and ten.

By point of error six, Smith asserts that the trial court erred by ordering Herco to pay his attorney's fees in the amount of $10,720. The jury found that 33½% was a reasonable attorney fee for Smith's lawyers. Smith contends that the trial court used the wrong measure of damages for calculating attorney's fees. Smith asks that we reform the trial court's judgment to reflect a larger amount of attorney's fees.

Because we conclude that DTPA damages of $89,600 was proper, we conclude that the trial court erred in the amount it awarded to Smith as attorney's fees. Applying the jury's finding of 33.5% as attorney's fees to $89,600, we conclude that the trial court should have awarded $30,016 as attorney's fees. We sustain point six and modify the judgment to award attorney's fees in the sum of $30,016.

By point seven, Smith contends that the trial court erred by failing to award him prejudgment interest. By its judgment, the trial court specifically stated that it "finds and concludes that the Plaintiff is not entitled to a recovery of any pre-judgment interest and Plaintiff's request for same is denied." Smith contends that he is entitled to prejudgment interest.

The primary objective of awarding damages in civil actions is to compensate the injured plaintiff, rather than to punish the defendant. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985). If a judgment provides only the amount of damages sustained at the time of the incident, plaintiffs are not fully compensated. This is because they have been denied the opportunity to invest and earn interest on the amount of damages between the time of the occurrence and the time of judgment. *Id.* *Cavnar* holds that a prevailing plaintiff may recover prejudgment interest on damages that have *accrued by the time of judgment*. *Id.* at 554. The *Cavnar* court explained that while damages are typically incurred intermittently throughout the prejudgment period, a plaintiff is not entitled to recover prejudgment interest on damages until those damages are actually sustained.

*Id.* This is because until that time, the plaintiff has not lost the use of the money he ultimately receives from the defendant. *Id.* at 554–55. Prejudgment interest is an additional damage award for the loss of use of money due as damages during the period between the accrual of the claim and the date of judgment. Though *Cavnar* involved a personal injury action, its reasoning and holding have been applied to many types of lawsuits, including DTPA actions. *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225, 230–31 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *see also* Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 6 (Vernon Supp.1994). A plaintiff is entitled to recover prejudgment interest as a matter of law on damages that have accrued by the time of judgment. *Gorman v. Life Ins. Co. of N.A.*, 859 S.W.2d 382, 390 (Tex.App.—Houston [1st Dist.] 1993, no writ).

We conclude that the trial court erred by denying Smith an award of prejudgment interest. We sustain point seven. We reverse the portion of the trial court's judgment denying Smith prejudgment interest and render that he recover prejudgment interest in the amount of *$87,890.*[5]

### Shearer v. Herco

The trial court held that after reviewing the jury's findings regarding Shearer's conduct, it appeared to the court that Shearer's conduct constituted fraud and was of the opinion that Shearer should indemnify Herco for any payment Herco made to Smith. By cross-point one, Shearer contends that the trial court erred by granting indemnity in favor of Herco against Shearer for all amounts which Herco pays to Smith under the judgment. By cross-point two, Shearer challenges the legal and factual sufficiency of the evidence supporting the series of jury questions related to fraud.

Shearer first argues that fraud was not pleaded and that, therefore, the portion of the judgment ordering indemnity was improper. However, we note that Herco, by its supplemental answer and cross-action to all pleadings, asserted the issue of fraud. Addi-

tionally, we note Herco pleaded for contribution or indemnity from the other defendants.

The jury in answering the charge questions found that Shearer had represented that it had made an "on the ground" survey and that there were no encroachments. The jury found this representation was material, was untrue, and that Shearer had made the representation with the knowledge that it was untrue, or that it was reckless about knowing whether it was true or not. The jury determined that Shearer made the representation with the intent that both Smith and Herco would rely on Shearer's representations on its survey and that both parties had in fact relied upon the representation. The jury also determined that the representation made by Shearer was a proximate cause of damages to both Smith and Herco. We will first address Shearer's cross-point two by which it asserts that the evidence is insufficient to support the finding of fraud.

Shearer's sufficiency complaints are related to jury questions 22, 23, and 24. Question 22 asked the jury if they found that Shearer had represented that it had done an "on the ground survey" of the property and that there were no encroachments. The jury answered, "yes." Question 23 asked the jury if they found this representation to be untrue; the jury answered "yes." Shearer concedes that the representation it made that there existed no encroachments was untrue. However, Shearer asserts that the evidence establishes that it conducted an "on the ground" survey and that, therefore, the jury's "yes" answer to question 22 cannot be sustained. We disagree.

Shearer's surveyor testified about the process he used when he conducted the survey. The surveyor stated that because he and his crew did not go inside the townhouse, they were unable to detect that one wall was not straight when it was indicated on the floorplan to be straight. The surveyor testified that the plat of the townhouse development showed the wall "to be straight, but it was built with a jog in it, and we didn't pick that up. We couldn't see it."

---

**5.** Ten percent simple interest on $89,600 from December 19, 1985, to April 20, 1993. *See* Tex. Rev.Civ.Stat.Ann. art. 5069–1.05 (Vernon Supp. 1994).

From this testimony, the jury could have concluded that the Shearer did not conduct a proper "on the ground" survey. We overrule Shearer's portion of point of error two by which it claims the evidence is insufficient to support the jury's answers to question 22.

By the jury's answer to question 24, it found that Shearer made the false representation with knowledge that it was untrue or made the statement with reckless disregard as to whether the statement was true. We conclude sufficient evidence exists to support this jury finding.

Finally, we address Shearer's cross-point one by which it urges that the trial court erred by ordering Shearer to indemnify Herco for any payments it makes to Smith since the comparative negligence statute abolished the common law doctrine of indemnity between joint tortfeasors. We note that this case, however, does not present a situation with joint tortfeasors committing negligence. The jury found fraud was committed by Shearer against Herco. Herco properly pleaded its fraud cause of action. The court's judgment of indemnity by Shearer to Herco was not based upon a negligence finding but was based upon the jury's fraud findings. We conclude that the court's order that Shearer indemnify Herco for payments it makes to Smith was not error. We overrule Shearer's cross-point one.

Having addressed all dispositive points and cross-points, we reverse and render that Smith recover 1) $57,600 as damages to his credit, 2) $30,016 as attorneys fees, and 3) $87,890 as prejudgment interest. We affirm the remainder of the trial court's judgment.