# NO. 12-23-00217-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *AZIB CHOTANI AND AZAM CHAUDHRY, APPELLANTS* | § | *APPEAL FROM THE 4TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *MOHAMMAD KHAN, RAFAQAT ALI AND MEHAK INVESTMENTS, LLC, APPELLEES* | § | *RUSK COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Azib Chotani and Azam Chaudhry appeal from the trial court's judgment in favor of Muhammad Khan and Rafaqat Ali. They present two issues on appeal. We reverse and render.

## BACKGROUND

This case arose out of legal relationships concerning a convenience store in Kilgore, Texas, known as Tiger Express or TexStop #3. At all times relevant to this case, YCF Properties owned the store's premises and White Oak Station owned the master lease to operate the store.[1]

In the Spring of 2018, Ali lived in Arlington, Texas, and was employed as a personal driver for companies such as Uber. He met Saad Sheikh at a party at his boss' house in Dallas and learned that Sheikh was in the business of owning and operating convenience stores. Ali,

---

[1] Neither YCF nor White Oak are parties to the case.

who had previous experience as a convenience store clerk, expressed an interest in finding a store to operate. Shiekh gave him Chotani's contact information.

Chotani, the Chief Operating Officer for White Oak Station, was tasked with finding operators to lease stores either owned by the company or under an operations lease. He also occasionally acted as a broker to help arrange the sale of convenience stores and the leasing of stores' operational rights.

Chaudhry had been in the convenience store business for approximately twenty years and operated four or five different stores. In the Spring of 2018, he had been operating the Tiger Express since January under his entity Menghi Enterprises, Inc., subleasing the store from White Oak. He wished to sell his lease and find another store closer to his home in the Dallas area.

Ali contacted Chotani in March 2018. Chotani informed Ali that he knew of three convenience stores for lease: one in Arkansas, one in Kilgore, and one in Carthage. Ali was interested in the Kilgore store because of its proximity to his home. Chotani acted as a broker between Ali and Chaudhry in negotiating an agreement. Ali received full authority to inspect the store and pull reports from the store's point of sales system.

Khan, Ali's father-in-law, wanted to start a business to support his family and agreed to help Ali finance the acquisition of the operations lease and formed Mehak Investments LLC. He contributed $12,500 of lottery winnings to help buy the store lease. Ali also went to Pakistan to sell family land to fund the purchase.

The lease agreement was signed on May 28, by which Menghi agreed to sublease its operational lease at Tiger Express to Mehak. Mehak would also purchase the store's existing inventory. Mehak assumed management of the store in early July. Ali served as the store manager and dealt exclusively with Chotani while operating the store. Khan did not operate the store and did what Ali told him needed to be done.

Convenience stores require certain licenses to operate and sell specific items. These include sales tax, tobacco, lottery, alcohol, and fuel. All licenses must be in the name of a single person or entity. When Mehak assumed operations in July, it did not have any of its own licenses. Chaudhry agreed to allow Ali to operate the store as a manager under Menghi until Mehak obtained its own licenses. And because of the way the fuel supply cost is paid, Chaudhry also allowed Mehak to use a Menghi bank account. Mehak obtained some of the necessary licenses; however, Ali stated that the Texas Alcoholic Beverage Commission (TABC) denied the

2

alcohol license in November or December. No documentation of the denial was offered into evidence.

Chaudhry proposed that he transfer Menghi to Khan, so that Khan and Ali could then use Menghi's alcohol permit. Khan agreed and they met at Chaudhry's accountant's office on January 26, 2019. Chaudhry signed an undated stock issuance certificate for 1,000 shares. Khan signed a notice of amendment to Menghi's agent of record naming himself as the registered agent for Menghi and filed it with the Texas Secretary of State.

Shortly thereafter, Khan and Ali attempted to renew Menghi's fuel permits with the Texas Commission on Environmental Quality (TCEQ). However, those were denied because TCEQ assessed a fine against Menghi via a default order on October 3, 2018. Chaudhry denied any knowledge of the fine until he was informed of it by Ali and Khan. In May 2019, Mehak obtained a TCEQ tank registration. Soon afterwards, Ali told Chotani that he and Khan were unhappy operating the store and wanted to sell their lease. Chotani agreed to buy the lease and assumed operations in July 2019.

Eventually, Ali and Khan filed suit against Sheikh, Chotani, and Chaudhry alleging causes of action for fraud by non-disclosure, violations of the Deceptive Trade Practices Act (DTPA), breach of fiduciary duty, and civil conspiracy. The day before trial, the trial court limited Ali's and Khan's economic damages claim to the amount of the TCEQ fine after they represented that the administrative penalty assessed against Menghi serves as the basis of their case. The case then proceeded to a jury trial. At the conclusion of trial, the trial court granted a directed verdict dismissing Sheikh and the civil conspiracy cause of action. The jury then found in favor of Khan and Ali on both the fraud by non-disclosure and DTPA claims. The jury awarded Khan $52,555 in economic damages, the amount of the TCEQ fine, for each claim. The jury further awarded Khan an additional $10,000 in damages on the DTPA claim. And the jury awarded Ali $25,000 in mental anguish damages for each claim. Chotani and Chaudhry filed a motion to disregard the jury answers and a judgment notwithstanding the verdict, which the trial court denied. The trial court rendered judgment in accordance with the jury's verdict, ultimately awarding Khan a total of $121,410.04 and Ali $63,202.08, including damages, attorney's fees, court costs, and prejudgment interest. This appeal followed.

In issue 1.D, Chotani and Chaudhry contend Khan and Ali lacked standing to bring their DTPA claim because they are not consumers.[2]

**Applicable Law**

The elements of a DTPA "laundry list" cause of action are (1) the plaintiff is a consumer; (2) the defendant engaged in a false, misleading, or deceptive act or practice; (3) that was relied on by the consumer; and (4) that constituted a producing cause of the consumer's actual damages. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (West 2021). To prove an action for a violation of the DTPA, the plaintiff must establish its status as a consumer. *Eckman v. Centennial Sav. Bank,* 784 S.W.2d 672, 674 (Tex. 1990). Proving standing under the DTPA requires demonstration that the plaintiff was (1) a consumer that (2) sought or acquired, by purchase or lease, (3) goods or services. TEX. BUS. & COM. CODE ANN. § 17.45(4) (West 2021); *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996). To qualify as a consumer under the DTPA, two requirements must be established by the plaintiff: (1) the person must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint. *Cameron v. Terrell & Garrett Inc.,* 618 S.W.2d 535, 539 (Tex. 1981); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174–75 (Tex. 1980). If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress. *Cameron,* 618 S.W.2d at 539; *Lewis,* 603 S.W.2d at 175.

The DTPA statute requires us to liberally construe it to protect consumers from false, misleading, and deceptive business practices. TEX. BUS. & COM. CODE ANN. § 17.44(a) (West 2021); *Kennedy v. Sale,* 689 S.W.2d 890, 892 (Tex. 1985). The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. § 17.45(4). Goods are defined as "tangible chattels or real property purchased or leased for use." *Id*. § 17.45(1). Tangible property includes both real and personal property. *Wheeler v. Box,* 671 S.W.2d 75, 77 (Tex. App.—Dallas 1984, no writ). Tangible property is commonly understood to be property that is capable of being handled or touched. *Id.*

---

[2] Chaudhry and Chotani present two issues that contain several sub-issues. 1.D is one such sub-issue and we will refer to the sub-issues in that manner throughout the opinion.

The DTPA excludes transactions that convey wholly intangible rights, such as money or accounts receivable, that are not associated with any collateral services. *See Lewis,* 603 S.W.2d at 174–75; *Clary Corp. v. Smith,* 949 S.W.2d 452, 464 (Tex. App.—Forth Worth 1997, pet. denied). Generally, a business is an intangible, unless it encompasses goods or services purchased for use in the function of the business. *Clary Corp.,* 949 S.W.2d at 464; *Wheeler,* 671 S.W.2d at 78–79. Whether a party is a consumer under the DTPA is a question of law. *Basic Energy Serv., Inc. v. D-S-B Props., Inc.,* 367 S.W.3d 254, 269 (Tex. App.—Tyler 2011, no pet.).

<u>Application</u>

Khan and Ali contend that Chaudhry and Chotani violated the DTPA by making false and fraudulent representations regarding the rights they possessed, the goods and services available, and the lack of liabilities. *See* TEX. BUS. & COM. CODE ANN. §§ 17.45(5), 17.46(b)(5), (24), 17.50(a)(3) (West 2021). In their petition, they urge that Chotani and Chaudhry misrepresented that they owned the property on which the store is located. They further claim Chaudhry and Chotani misrepresented whether the store would be able to sell alcohol, which affected the profitability. And they claim they were not told that Menghi was subject to a TCEQ lien and faced potential liability in an ongoing lawsuit at the time of the transfer. Chotani and Chaudhry, in turn, urge that Khan and Ali are not consumers under the DTPA and lack standing to bring a DTPA action.

At a pretrial conference the day before trial, Ali and Khan represented to the trial court that their economic damages were only based on the amount of the fine that was not disclosed prior to the sale of Menghi. And the trial court limited the economic damage model to the amount of the fine. As such, Ali and Khan limited the basis of their claim to the sale or transfer of Menghi. *See Smith v. Herco, Inc.,* 900 S.W.2d 852, 860 (Tex. App.—Corpus Christi 1995, writ denied) (DTPA allows recovery of actual damages caused by the deceptive practice).

Khan and Ali did not purchase the mere intangible right to operate the convenience store in Kilgore. Instead, they leased the physical premises and agreed to purchase physical assets, consisting of the store's inventory. We hold this transaction qualified as one for "goods and services," thereby satisfying the first requirement to qualify as a consumer.

We now address whether Ali and Khan satisfy the second requirement, i.e., whether the goods or services purchased or leased form the basis of their complaints. The representation that forms the basis of their claim involves the transfer of Menghi's shares to Khan so the store could

use Menghi's TABC license to sell alcohol. They contend that Chaudhry failed to disclose that Menghi had a $52,555 lien against it by the TCEQ and misrepresented that the corporation was unencumbered. However, as mentioned above, a business or corporation is an intangible and not considered a good or service under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.45(1); *Clary Corp.,* 949 S.W.2d at 464; *Wheeler,* 671 S.W.2d at 78–79. Therefore, we hold Khan and Ali were not consumers under the provisions of the DTPA. We sustain Chotani's and Chaudhry's issue 1.D.

### <u>LEGAL SUFFICIENCY - FRAUD</u>

In issues 2.A and 2.B, Chotani and Chaudhry urge the evidence is legally insufficient to support the jury's finding of fraud by non-disclosure and the trial court erred in overruling their motion for a judgment notwithstanding the verdict (JNOV).

## Standard of Review

A trial court may disregard a jury verdict and render a JNOV if no evidence supports the jury finding on an issue necessary to liability or if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). A directed verdict is proper (1) when the evidence conclusively establishes the movant's right to judgment or negates the opponent's right, or (2) when the evidence is insufficient to raise a material fact issue. *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A jury finding should also be disregarded if a legal principle prevents a party from prevailing on a claim or defense. *See Hous. Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

We review the granting or denial of a JNOV under a legal sufficiency standard. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 809–28 (Tex. 2005). We view the evidence in the light most favorable to the verdict. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). We credit evidence favoring the jury verdict if reasonable jurors could and must disregard contrary evidence unless reasonable jurors could not. *See Tanner*, 289 S.W.3d at 830. Every reasonable inference deducible from the evidence is to be indulged in support of the jury's finding. *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence

from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014).

Generally, when we sustain a legal-sufficiency issue, we must render judgment for the appellant because that is the judgment the trial court should have rendered. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 595 (Tex. 2008) (sustaining challenge to legal sufficiency of evidence and rendering take nothing judgment); *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986); *EAN Holdings, LLC v. Arce*, 636 S.W.3d 290, 295 (Tex. App.—Fort Worth 2021, pet. denied). Finally, when a party presents multiple grounds for reversal, we decide rendition issues (legal sufficiency challenges) before remand issues (factual sufficiency challenges). *See* TEX. R. APP. P. 43.3; *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam); *Altice v. Hernandez*, 668 S.W.3d 399, 409 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

## Applicable Law

Fraud by non-disclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To establish fraud by non-disclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (explaining that there must be a duty to disclose); *Wise v. SR Dall., LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) (listing the elements for fraud by non-disclosure) (citing *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

## Application

Chaudhry and Chotani deny failing to disclose a material fact within their knowledge and urge there was no evidence they were aware of the TCEQ lien against Menghi.

The evidence at trial showed that Khan and Ali formed Mehak and attempted to secure the necessary licenses under that name to operate the convenience store. However, the TABC

7

denied the application for the license to sell alcohol. Menghi already had a license to sell alcohol for the store. None of the parties were exactly clear as to why Mehak's application was denied; however, there was some discussion about a school being near the convenience store. Chaudhry offered to allow Khan and Ali to use Menghi's TABC license. But because all the store's licenses must be under the same business, Chaudhry would have to transfer ownership of the company to Khan. In January 2019, Khan and Chaudhry met at Chaudhry's CPA's office and Chaudhry signed an undated stock issuance certificate for 1,000 shares. Khan signed a notice of amendment to Menghi's agent of record the same day and filed it with the Texas Secretary of State, which named himself as Menghi's registered agent.

Shortly thereafter, Khan and Ali applied to renew Menghi's TCEQ permit. The application was denied because of the TCEQ fine against Menghi from October 2018 in the amount of $52,555. The fine apparently concerned a different convenience store Chaudhry previously owned. When he purchased it, he was notified of environmental complaints that had to be addressed. Chaudhry made corrective actions at that convenience store throughout 2017. He stopped operating that store in March 2018. Chaudhry claimed he was unaware of the fine until Khan and Ali told him about it. The notice of the fine was sent to Menghi's registered address, which is the same address listed on other Menghi documents. Chaudhry claimed he moved from that address in 2016 and did not receive notice of the default order. He further testified that his CPA handles all his corporate paperwork and he believed the CPA would have handled changing the address on his paperwork.

Khan testified that he was not involved with the operation of the convenience store. However, he believed he was purchasing Menghi so that the store could operate. But Khan claimed that purchasing the company did not fix the problems with the store because they were unable to sell gasoline.

Jurors are the sole judges of the weight and credibility of the witness testimony, and if the evidence at trial would allow reasonable, fair-minded jurors to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 819, 822. It is entirely possible that the jurors did not believe Chaudhry's claim that he was unaware of the fine, especially since he had previous knowledge of the violations that led to the fine.

Chaudhry and Chotani further argue that, even if they failed to disclose the fine to Khan, Khan failed to prove he was harmed by such failure. While Khan and Ali testified that the store

8

could not sell gasoline for approximately three months after the license renewal was denied, they offered no evidence of the amount of lost profits. The only damages they claimed was the $52,555 TCEQ fine. Neither Khan nor Ali paid the fine, and Ali testified that they had no intention of paying the fine. In addition, there was no evidence that Menghi became less valuable or lost income because of the fine. And neither Khan nor Ali could confirm that Menghi was still functioning or still had its corporate charter in force. Furthermore, the TCEQ fine is a liability of the corporation, and Khan, as a stockholder, cannot recover damages personally for a wrong done solely to the corporation. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). The general principle of damages is compensation to a plaintiff for his actual loss resulting from a defendant's wrong. *R. G. McClung Cotton Co. v. Cotton Concentration Co.*, 479 S.W.2d 733, 737 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.). Because Khan offered no evidence that he suffered harm as a result of the failure to disclose the TCEQ fine, the evidence is legally insufficient to support the jury's finding of fraud by non-disclosure. We sustain Chotani and Chaudhry's issues 2.A and 2.B.

## MENTAL ANGUISH DAMAGES

In issue 1.E, Chotani and Chaudhry urge that the evidence was insufficient to show Ali suffered mental anguish damages.[3]

"The mere fact of injury does not prove compensable pain and mental anguish." *Grant v. Cruz*, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet). Generally, to support an award of mental anguish damages, the plaintiff's evidence must describe "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine." *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). The Texas Supreme Court held that "some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish." *Parkway*, 901 S.W.2d at 445. But even when an occurrence is of the type for which mental anguish damages are recoverable, evidence of the nature, duration, and severity of the mental anguish is required. *Hancock v. Variyam*, 400

---

[3] We note that the jury charge contained a separate question for whether Chotani and Chaudhry committed fraud in the sale of Menghi to Ali when that cause of action is not contained in the petition. However, the propriety of that question was not presented on appeal. Therefore, we address Ali's damages separate from the cause of action alleged by Khan.

S.W.3d 59, 68 (Tex. 2013). The record must reflect more than the existence of "mere emotions" to support an award of damages for mental anguish. *Latham v. Castillo*, 972 S.W.2d 66, 70 (Tex. 1998).

The evidence at trial failed to establish that Ali's alleged mental anguish constituted anything more than mere worry and anxiety over the convenience store business. Nor did the evidence distinguish between worry about the profitability of the store and learning that Menghi was burdened with a TCEQ fine, which is the basis of the fraud complaint. Ali and his son, Muhammad Numann, both testified that Ali suffered from depression, sleepless nights, and lost weight as a result of the business. However, according to Numann, this behavior was originally tied to learning that Chotani and Chaudhry did not own the land on which the convenience store sat. Ali apparently believed they would be allowed to purchase the land after approximately ten years even though the lease only includes a right of first refusal and not an option to purchase. Numann further testified that he could not remember if Ali's troubles started before or after they learned of the TCEQ fine.

None of the evidence of Ali's alleged mental anguish revealed any evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation" caused by the failure to disclose the TCEQ fine when transferring the ownership of Menghi. *See Parkway*, 901 S.W. 2d at 444. As such, the evidence is insufficient to support the jury's mental anguish damages award in favor of Ali. We sustain Chotani and Chaudhry's issue 1.E.[4]

### DISPOSITION

Having sustained Chotani's and Chaudhry's issues 1.D, 1.E, 2.A, and 2.B, we *reverse* the trial court's judgment and *render* judgment that Ali and Khan take nothing.

**GREG NEELEY**
Justice

Opinion delivered July 24, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[4] We need not address Chotani's and Chaudhry's remaining issues and sub-issues. *See* TEX. R. APP. P. 47.1

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 24, 2024**

**NO. 12-23-00217-CV**

**AZIB CHOTANI AND AZAM CHAUDHRY,**
Appellants
V.
**MOHAMMAD KHAN, RAFAQAT ALI AND MEHAK INVESTMENTS, LLC,**
Appellees

Appeal from the 4th District Court
of Rusk County, Texas (Tr.Ct.No. 2020-031)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED, and DECREED by this court that the trial court's judgment be **reversed,** and a judgment that Rafaqat Ali and Muhammad Khan take nothing be **rendered**; and all costs of this appeal are hereby adjudged against the appellees, Mohammad Khan, Rafaqat Ali and Mehak Investments, LLC, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*