**COMMERCIAL ESCROW COMPANY and James De Mik, Appellants,**

v.

**ROCKPORT REBEL, INC., Appellee.**

**No. 13–89–004–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1989.

Rehearing Denied Oct. 12, 1989.

Alan Mask, Dallas, for appellants.

Colin K. Lineberry, Robert W. Johnson, Jr., Matthews & Branscomb, Corpus Christi, for appellee.

Before UTTER, SEERDEN, and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

Rockport Rebel, Inc., appellee, brought suit against the Commercial Escrow Company and James De Mik, appellants, alleging that appellants had disbursed funds they were holding in escrow for appellee without appellee's prior authorization. A jury found appellants guilty of deceptive trade practices, negligence, and a breach of fiduciary duty and found that Commercial Escrow was the alter ego of James De Mik. Based on the jury's findings, the trial court ordered Rockport Rebel recover from appellants, jointly and severally, the total amount of $46,002.00 plus pre- and post-judgment interest. We affirm the judgment of the trial court.

On or about July 10, 1986, Rockport Rebel entered into a contract to sell The Best Western Rockport Rebel Motel to the TDL Development Company (TDL). However, because of TDL's inability to pay $25,-000.00 in earnest money, Rockport Rebel agreed to put that amount into an escrow account pursuant to the Addendum to Contract to Purchase Best Western ("Addendum") to facilitate the sale of the motel. The Addendum was executed between Rockport Rebel and TDL on July 18, 1986 and provided that if the sale of the motel did not close, the earnest money would be refunded in full to Rockport Rebel. Hanco Properties, Rockport Rebel's real estate agent, subsequently delivered a $25,000.00 cashier's check and a copy of the Addendum to Commercial Escrow, who in turn, deposited the check into an escrow account.

On July 21, 1986, Commercial Escrow issued an escrow receipt improperly showing that the money had been received from TDL. Rockport Rebel notified Commercial Escrow of its error around the end of July. However, on August 13, 1986, Commercial Escrow released the money to Citywide Financial Services (Citywide), the party with whom TDL filed an application for financing the purchase of the motel. A corrected escrow receipt was subsequently issued on August 22, 1986. Rockport Rebel learned about September 19, 1986 that the money had been released to Citywide. Since that time, Citywide has ceased to exist and the sale of the motel was not completed. Commercial Escrow, however, refused to return the $25,000.00 in accordance with the Addendum. Appellee subsequently filed this suit.

Appellants challenge the sufficiency of the evidence by fifteen points of error. In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—

Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ By their first through third points of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answers to special issues twelve through fourteen. Special issues twelve through fourteen asked the jury what sums of money would reasonably compensate Rockport Rebel for the damages caused by appellants' deceptive trade practices, negligence, and breach of fiduciary duties. The jury answered $25,000.00 as to each cause of action. Appellants contend that the evidence fails to show that Bruce Stark was acting in his representative capacity as president of Rockport Rebel when he placed the $25,000.00 in escrow or that Rockport Rebel was otherwise involved in or suffered a loss from the transactions in question. Appellants argue that Bruce Stark was the true party in interest and that this suit was actually prosecuted by the wrong plaintiff.

Bruce Stark testified that he is the president and chief operating officer of Rockport Rebel, a corporation which owns the Best Western Motel. Rockport Rebel is composed of six shareholders who collectively make the decisions for the corporation. Stark further testified that since Rockport Rebel was having difficulty obtaining long-term financing for the motel, they decided to sell the motel if they could find a buyer. TDL subsequently offered to purchase the property and sought financing through Citywide. Citywide, however, required a $25,000.00 loan commitment fee be placed in escrow with the Commercial Escrow Company before they would proceed. TDL was unable to put up that amount. Since Rockport Rebel needed to sell the motel, they began "considering, as the seller, putting up the twenty-five thousand dollars," and subsequently agreed "if they would put it into an escrow account where we could control it ... that would be the only way we would accept it."

An escrow agreement was drawn up and signed which was entitled "Addendum to Contract to Purchase the Best Western Rockport Rebel" and lists the seller as "Bruce Stark, et al." The Addendum further states that *"seller* will deposit into an escrow account ... the sum of $25,000.00 as required in this contract ... [and] that if this contract is not completed (funded, closed, consummated), then this money will be fully refunded to seller ..." (emphasis added). The cashier's check for $25,000.00 which was accepted and deposited by Commercial Escrow lists "Best Western Rebel Rockport" as remitter. Lastly, when asked on cross-examination whether he had done anything to put the name of Bruce Stark in the file of the Commercial Escrow Company, Stark expressly stated that "Bruce Stark was not doing this transaction. Rockport Rebel, Inc., was doing this transaction."

We conclude that there is sufficient evidence to show that Rockport Rebel suffered the damages the jury found in special issues twelve through fourteen. *Cf. Aztec Management & Investment Co. v. McKenzie,* 709 S.W.2d 237, 238 (Tex.App.—Corpus Christi 1986, no writ). We overrule appellants' first through third points of error.

By their fourth point of error, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's implied finding that appellee was a consumer as defined by the Deceptive Trade Practices Act.

■ Whether or not plaintiff is a consumer under the DTPA is a question of law to be determined by the trial court from the evidence. *First Federal Savings & Loan Association v. Ritenour,* 704 S.W.2d 895, 898 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Reed v. Israel National Oil Co.,* 681 S.W.2d 228, 233 (Tex.App.— Houston [1st Dist.] 1984, no writ). Tex. Bus. & Comm.Code Ann. § 17.45(4) (Vernon 1987) describes a "consumer" as a "corporation ... who seeks or acquires by purchase or lease, any goods or services...." A plaintiff establishes its standing as a consumer in terms of its relationship to a transaction, not by a contractual relationship with the defendant. *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361, 366 (Tex.1987); *March v. Thiery,* 729 S.W.2d 889, 896 (Tex.App.— Corpus Christi 1987, no writ). The only requirement is that the goods or services sought or acquired by the plaintiff form the basis of its complaint. *Kennedy v. Sale,* 689 S.W.2d 890, 892–93 (Tex.1985); *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983).

■ The record reflects that Rockport Rebel sought and acquired escrow services from Commercial Escrow to facilitate its sale of a motel to TDL. The record further reflects that TDL was seeking financing to purchase that motel from Citywide and that the escrow services were actually paid for by Citywide pursuant to a master escrow agreement between Commercial Escrow and Citywide.

Rockport Rebel was not required to show that it somehow actually paid for the escrow services itself. *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180, 183–85 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Reuben H. Donnelley Corp. v. McKinnon,* 688 S.W.2d 612, 616 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Waters v. Hollie,* 642 S.W.2d 90, 92 (Tex.App.—Fort Worth 1982, no writ). Rather, Rockport Rebel's relationship to the transaction as a whole established its consumer status. We conclude that the escrow services sought and acquired from Commercial Escrow form the basis of Rockport Rebel's complaints and that Rockport Rebel was a consumer under the DTPA. We overrule appellants' fourth point of error.

■ By their fifth through tenth points of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answers to special issues four through six. These issues asked the jury whether appellants, by the issuance of a corrected escrow receipt (PX–4), represented (1) that their services had characteristics, uses or benefits which they did not have; (2) that their services were of a particular standard or quality when they were of another; and (3) that work or

services had been performed when the work or services had not been performed. These issues further asked whether each of the above representations was a producing cause of Rockport Rebel's damages. Additionally, appellants argue that since these special issues were narrowly submitted and only inquired whether the issuance of the corrected escrow receipt (PX–4) made various representations that were the producing cause of Rockport Rebel's damages, our review is limited in scope to that document. We disagree. PX–4 was merely an "escrow receipt" which appellants issued indicating that they had, in fact, received the $25,000.00 from Bruce Stark for the Rockport Rebel Best Western Motel Project. The issuance of this escrow receipt was merely appellants' final act regarding Rockport Rebel's escrow agreement contract. *Cf. Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 880 (Tex.App.—Corpus Christi 1988, writ denied) (post-transaction representations are generally not subject to DTPA actions). Therefore, we must review the entire record, including the "Addendum To Contract To Purchase the Best Western Rockport Rebel," to determine whether appellants made any representations that could have been the producing cause of Rockport Rebel's damages.[1]

The Addendum was the actual escrow agreement signed by Bruce Stark (Rockport Rebel), Mark Gordon (Hanco Properties, Rockport Rebel's sales agent), Douglas Frye and Tom Mahoney (TDL). Commercial Escrow was listed on the Addendum as the escrow agent and gave their approval over the phone. Commercial Escrow subsequently received a $25,000.00 cashier's check dated July 18, 1986 which lists Best Western Rebel Rockport as remitter, has endorsements from both Hanco Properties and Commercial Escrow, and has bank notations indicating that it was processed and paid on July 23, 1986. Gordon personally delivered a copy of the Addendum to Commercial Escrow around July 23, 1986. This Addendum contained the

escrow instructions and stated that "the escrow agent [Commercial Escrow] is advised, and all parties agree, that if this contract is not completed (funded, closed, consummated), then this money will be fully refunded to the seller [Rockport Rebel] without regard for any costs or expenses incurred by any of the parties to this agreement."

The record reflects that Commercial Escrow initially issued a receipt (PX–3) on July 21, 1986 for these funds indicating that $25,000.00 had been deposited by TDL, the prospective purchaser, and not by Rockport Rebel. Stark, however, upon learning that the escrow receipt improperly listed TDL as having deposited the monies, demanded that a corrected escrow receipt be issued. Commercial Escrow subsequently issued the corrected escrow receipt (PX–4) on August 22, 1986. Several witnesses testified concerning the importance of properly listing who deposited the money into escrow. In fact, James De Mik, president of Commercial Escrow, testified on cross-examination that the escrow receipt is essentially a claim for money and that it is "an indication that the money had been received and should be handled in [the] manner in which [it was] instructed."

The record further reflects that Commercial Escrow had already released the $25,000.00 to Citywide on August 13, 1986 and that they did so without Bruce Stark's or Rockport Rebel's prior knowledge or approval. Thereafter, the prospective sale of the motel collapsed and Commercial Escrow refused to return the $25,000.00 to Rockport Rebel as required under the escrow agreement.

We conclude that there is sufficient evidence to support the jury's answers to special issues four through six. The evidence shows that Commercial Escrow received $25,000.00 from Rockport Rebel and a copy of the Addendum, but that they failed to abide by the terms of the Addendum. By accepting these funds and the Addendum,

---

1. We should note that even had we been constrained to review only PX–4, testimony was adduced at trial which indicated the issuance of such a receipt gave the false impression that the money was "safe" when, in fact, it was not.

Commercial Escrow made various representations concerning the escrow services they would provide. *See* Tex.Bus. & Comm.Code Ann. § 17.46(b)(5), (7), and (21) (Vernon 1987). However, when Commercial Escrow wrongfully disbursed the funds to Citywide in contravention of the Addendum's instructions, Commercial Escrow failed to adhere to these representations. The evidence further reveals that these misrepresentations were the producing causes of Rockport Rebel's damages. *See Ritenour*, 704 S.W.2d at 900; *see also Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); *Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914, 922–23 (Tex.App.—Waco 1985, writ dism'd). We overrule appellants' fifth through tenth points of error.

By their twelfth point of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answer to special issue number seven finding that appellants engaged in an unconscionable course of conduct.

■ A consumer may maintain a cause of action when any unconscionable action or course of action is the producing cause of actual damages. Tex.Bus. & Comm. Code Ann. § 17.50(a)(3) (Vernon 1987). In fact, a finding that a defendant engaged in an unconscionable act or course of action is sufficient to support a DTPA action even in the absence of specific misrepresentations. *First Texas Savings Assoc. v. Stiff Properties*, 685 S.W.2d 703, 706 (Tex.App.—Corpus Christi 1984, no writ); *Bennett v. Bailey*, 597 S.W.2d 532, 535 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). Tex.Bus. & Comm.Code Ann. § 17.45(5) (Vernon 1987) defines unconscionable conduct as an act or practice which, to a person's detriment:

A. Takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; *or*

B. Results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Evidence under either definition will support the trial court's judgment. *Brown v. Galleria Area Ford, Inc.*, 752 S.W.2d 114, 116 (Tex.1988).

■ We have carefully reviewed the record and find that there is sufficient evidence to support the jury's answer. First, Rockport Rebel delivered $25,000.00 to Commercial Escrow to be placed in escrow for safekeeping. To date, however, Rockport Rebel has received nothing in return and Commercial Escrow continues to refuse to return those funds in accordance with the Addendum agreement. Second, De Mik testified on cross-examination that there were other instances wherein unknown "substitute" or "surrogate" parties actually put up $25,000.00 and that those instances also required "corrected paper." He also admitted that he testified during his deposition that sometime around July or August, "Because of Mr. Stark's difficulty or whatever, we were pretty well flagged." De Mik further admitted that they were experiencing problems concerning the accuracy of the documentation they were receiving from Citywide's agents. Most specifically, they were having problems identifying the true parties in interest of the money that was being deposited with Commercial Escrow. Notwithstanding these problems, Commercial Escrow disbursed these funds without Rockport Rebel's prior knowledge or approval. In fact, Commercial Escrow even issued a corrected escrow receipt after those funds had already been transferred to Citywide thereby giving the false impression that Commercial Escrow still had the funds. The evidence is sufficient to support the jury's findings that appellants engaged in an unconscionable course of conduct. We overrule appellants' twelfth point of error.

By their eleventh point of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answer to special issue number two finding that Commercial Escrow acted as an escrow agent for Rockport Rebel.[2]

---

**2.** Appellants have not challenged the sufficiency of the evidence to support the jury's answer to special issue number three finding that Com-

mercial Escrow had breached its fiduciary duties to Rockport Rebel.

An "agent" is one who is authorized by another to transact business or manage some affair. *Boyd v. Eikenberry,* 132 Tex. 408, 122 S.W.2d 1045, 1047 (Tex. Comm'n App.1939, opinion adopted); *Augusta Development Co. v. Fish Oil Well Servicing Co.,* 761 S.W.2d 538, 543 (Tex. App.—Corpus Christi 1988, no writ). It denotes a consensual relationship between two parties by which one acts on behalf of another subject to the other's control. *Neeley v. Intercity Management Corp.,* 732 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1987, no writ); *Tamburine v. Center Savings Assoc.,* 583 S.W.2d 942, 948 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). The agency relationship does not depend upon express appointment or assent by the principal; rather, it may be implied from the conduct of the parties under the circumstances. *Jorgensen v. Stuart Place Water Supply Corp.,* 676 S.W.2d 191, 194 (Tex.App.—Corpus Christi 1984, no writ); *Dallas Heating Co. v. Pardee,* 561 S.W.2d 16, 20 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

Here, Stark was acting in his representative capacity with Rockport Rebel when he signed the Addendum. This Addendum and a check for $25,000.00 were delivered to and accepted by Commercial Escrow. This Addendum expressly states that Commercial Escrow would be acting as the escrow agent in this transaction. We hold that there was sufficient evidence to show that Commercial Escrow was acting as Rockport Rebel's agent in this transaction. We overrule appellants' eleventh point of error.

By their thirteenth point of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answer to special issue number one which found that appellants' negligence proximately caused Rockport Rebel's damages. Appellants also contend that Rockport Rebel's cause of action sounds purely in contract because the only damage appellee sustained was the loss of $25,000.00 under the Addendum agreement.

The contractual relationship of the parties may create duties under both tort and contract law and a party may breach duties in tort or contract alone or simultaneously in both. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). The nature of the injury often determines which duty or duties are breached and when the injury is only the economic loss to the subject of the contract alone, generally the action sounds in contract. *Id.*

The record reveals that appellants were aware that Citywide was not properly disclosing the true principals in these transactions but that Commercial Escrow did not change its office practices to ascertain the true principals in the escrow transaction in which they were participating until October of 1986. Moreover, Commercial Escrow disbursed the funds in question to Citywide even though there was an Addendum agreement in their file which precluded them from doing so and without Rockport Rebel's prior knowledge and approval. In fact, had Commercial Escrow taken this simple step, they would have been clearly cognizant of the true transaction surrounding the sale of the motel. To make matters worse, however, Commercial Escrow issued a corrected escrow receipt, but failed to notify or otherwise disclose that the funds had already been transferred to Citywide. In short, Commercial Escrow failed to follow adequate procedures to insure the protection of Rockport Rebel's funds. Therefore, the facts of this case sounds in both tort and contract simultaneously. We hold that there is sufficient evidence to show appellants were negligent and that this negligence was the proximate cause of Rockport Rebel's damages. *See Capital Title Co. v. Mahone,* 619 S.W.2d 204, 207 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Chilton v. Pioneer National Title Insurance Co.,* 554 S.W.2d 246, 249 (Tex. Civ.App.—Waco 1977, writ ref'd n.r.e.). We overrule appellants' thirteenth point of error.

By their fourteenth point of error, appellants challenge the legal and factual sufficiency of the evidence to support the jury's answer to special issue number nine finding that Commercial Escrow was the alter ego of De Mik.

Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). Specifically, alter ego is found where a corporation is organized and operated as a mere tool and business conduit of another individual or corporation. *Id.* It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. *Id.* Although alter ego is only one of the different bases for disregarding the corporate fiction, all of the different bases involve questions of fact which, except in very special circumstances, should be determined by the jury. *Id.* at 277.

The courts should pierce the corporate veil and impose personal liability upon an individual only under compelling circumstances. *McKenzie*, 709 S.W.2d at 239; *Hickman v. Rawls*, 638 S.W.2d 100, 102 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). The fact that a majority or even all of the stock in a corporation is owned by a single individual does not of itself make the corporation the alter ego of the individual. *Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 224 (1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943); *Aztec Management*, 709 S.W.2d at 239.

De Mik testified that he had initially run the escrow business as a sole proprietorship, but that he incorporated the business in 1985–1986. Although the sole proprietorship was only capitalized with $232.00, the corporation was capitalized with approximately $12,000.00 and was entirely free and clear of debt at the time. De Mik has, at all times, been the sole shareholder, director, and officer.

The record further reflects that at the time of the transactions in question, Commercial Escrow had two full-time and one part-time employees and that Commercial Escrow had its own bank account on which other employees signed checks. Commercial Escrow holds a charter from the State of Texas and is still in good standing. Commercial Escrow also has a federal tax ID number, files annual tax returns, and pays corporate taxes.

Appellee argues that Commercial Escrow was undercapitalized because it was only capitalized with between $232.00 and $12,000.00 when it was incorporated in 1985–1986, but that it handled escrow accounts in 1985 alone with an aggregate value of about seven million dollars. However, there was no evidence submitted showing that this amount was not sufficient capitalization for this type of business or that Commercial Escrow was either unable to pay its debts or even that it would be unable to pay appellee's claim. Appellee further argues that De Mik failed to follow corporate formalities and that De Mik operated Commercial Escrow as a "mere conduit" of himself. However, at most, the evidence shows that De Mik was the sole incorporator, shareholder, officer and director of Commercial Escrow. Although appellee notes that neither corporate records nor minutes of meetings were ever produced by Commercial Escrow at trial, appellants did not have the burden of proof.

There is no evidence in the record showing that corporate records and minutes did not exist. Further, the mere fact that appellant was unable to have a board of directors meeting because he would have been the only participant does not prove that corporate formalities were not followed. To the contrary, Commercial Escrow maintains its own bank account, pays its own taxes and holds a charter from the State of Texas. There was no evidence submitted showing either that there was a commingling of funds between De Mik and Commercial Escrow or that De Mik had used Commercial Escrow for his own personal purposes. In fact, we can find no evidence that the separateness between De Mik and Commercial Escrow has ceased or

that only holding Commercial Escrow liable would result in any injustice. We conclude that appellee has failed to carry its burden of proof on the issue of alter ego. We sustain appellants' fourteenth point of error.

However, the jury also found that De Mik personally and "knowingly" made the representations discussed under appellants' fifth through tenth points of error and engaged in an unconscionable course of conduct. Knowingly was defined in the court's charge as "actual awareness of the falsity or deception ... of the representations made ... [which] may be inferred where objective manifestations indicate that a person acted with actual awareness." This finding has not been challenged on appeal.

A corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation. *Kinkler v. Jurica*, 84 Tex. 116, 19 S.W. 359, 359 (1892); *Grierson v. Parker Energy Partners*, 737 S.W.2d 375, 377 (Tex.App.—Houston [14th Dist.] 1987, no writ). It is not necessary that the "corporate veil" be pierced in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing. *Barclay v. Johnson*, 686 S.W.2d 334, 336 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex. Civ.App.—El Paso 1972, no writ). Therefore, we conclude that because De Mik personally and knowingly participated in corporate wrongdoing he should be held personally liable. *Weitzel*, 691 S.W.2d at 601; *Barclay*, 686 S.W.2d at 336–38.

By their fifteenth point of error, appellants contend that Rockport Rebel may only recover attorneys' fees if it was successful on its DTPA claims. Since we have upheld the trial court's judgment under the DTPA, Rockport Rebel is entitled to an award of attorneys' fees under the Act. Tex.Bus. & Com.Code Ann. § 17.50(d) (Vernon 1987). We overrule appellants' fifteenth point of error.

The judgment of the trial court is AFFIRMED.