Larkin T. **THEDFORD** and Mary Nowlin, Independent Executor of the Estate of C.B. Nowlin, Deceased, Appellants,

v.

**MISSOURI PACIFIC RAILROAD COMPANY** and Grace Randolph, Appellee.

No. 13–95–019–CV.

Court of Appeals of Texas, Corpus Christi.

July 11, 1996.

Rehearing Overruled Aug. 22, 1996.

357th District Court, Cameron County, Texas.

---

1. *Joe O. Hinojosa, et al. v. Josue Teran, M.D., et al.,* Cause No. 94–12–07325–E, pending in the

40 

Emmett Cole, Jr., Cole, McManus, Cole & Easley, Victoria, Larkin Thedford, Edna, Leslie Werner de Soliz, Victoria, for Appellants.

James Stofer, James H. Murray, Jr., Anderson, Smith, Null, Stofer, & Murphree, L.L.P., Victoria, for Appellees.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

YANEZ, Justice.

Appellants Larkin Thedford and Mary Nowlin, as independent executor of the estate of C.B. Nowlin ("appellants"), brought suit against Missouri Pacific Railroad Company and its former employee Grace Randolph (hereinafter referred to collectively as "Appellees") for damages incurred as a result of the railroad company's alleged negligence, deceptive trade practices, and statutory violations. After a jury trial, the trial court entered judgment on the verdict awarding the appellants $3,000 in damages on one claim, but disregarded jury findings favorable to the appellants on their Deceptive Trade Practice Act (hereinafter "DTPA") claims.[1] Appellants contest the trial court's decision to disregard the jury's verdict in their favor on the DTPA claims. Appellants also allege that the court committed error by failing to grant an instructed verdict in their favor on a related claim, failing to submit certain questions to the jury, and failing to award certain damages and attorneys' fees in their favor. Appellees filed two crosspoints, alleging that the trial court erred in submitting to the jury certain DTPA questions, and in failing to disregard one of the jury's an-

---

1. The jury found that appellees did engage in deceptive trade practices, and awarded damages from past and future lost profits to the appellants in the amount of $175,000.

swers. We modify the judgment and affirm as modified.

Appellants brought this action as a result of a disagreement between themselves and the appellees about whether or not appellees were obligated to secure a railroad crossing at a certain point on appellants' property.[2] Several years prior to the suit, appellant Thedford had leased the mineral interests of the property to Sandefer Oil Company, which had in turn contracted with Missouri Railroad to secure a crossing on appellants' property for ingress and egress over the tracks. By agreement between Sandefer and Missouri Pacific, the crossing would expire either at the end of Sandefer's lease, or after it drilled a dry hole and abandoned the lease, whichever occurred first. In order to ensure that the crossing would remain in place for their own use, appellants contracted with Sandefer to transfer its rights in the crossing, and the physical materials in the crossing to appellants, in exchange for its release from any requirement to perform cleanup of the property before it left.

Thedford then contacted appellees to notify them of his intent to continue using the crossing, and asked what he needed to do to ensure the appellees would allow it to remain in place. The communications between Thedford and appellees on this issue form the basis of the lawsuit. Appellants maintain that Ms. Randolph, then an employee of Missouri, told Thedford that he simply needed to send the railroad company photographs of the crossing and property descriptions, and that he could possibly keep the crossing. When he called back to confirm whether the crossing would be granted, Thedford testified that Randolph told him that she had looked at the materials, that she was processing them, and that "everything looked okay." Appellants maintain that Randolph's false assurances prevented them from utilizing other means to secure the crossing.

Appellees maintain that Randolph never made any promises, that appellants knew there was a more thorough procedure which needed to be followed, and that there were no misrepresentations made. After approximately two years, during which time the appellants were allowed to continue using the Sandefer crossing, Missouri Pacific disassembled the Sandefer crossing. At roughly the same time, or shortly thereafter, Missouri Pacific constructed a crossing on an adjacent landowner's property.

Appellants brought suit alleging several causes of action, from violations of the DTPA, to negligence in processing their application, discrimination in granting crossings, breach of a duty of good faith and fair dealing, and violation of the crossing statute. The jury found that appellees were not liable and owed no damages on all causes of action except for the DTPA claims, and for failing to maintain necessary sluices.[3] In particular, the jury made the findings relevant to the DTPA claims summarized below:

3.A. The Railroad did engage in an "unconscionable action or course of action" that was a producing cause of damages to the plaintiffs.

4.A. The Railroad did engage in false, misleading, or deceptive acts or practices that were a producing cause of damages to the plaintiffs,

(b)–by causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, and

(c)–by misrepresenting the authority of a representative or agent to negotiate the final terms of a transaction.

5. The railroad did not promise to approve, in writing, a railroad crossing for the plaintiffs.

8. As a result of the actions described in 3.A. and 4.A., the plaintiffs suffered past or

---

2. Missouri Pacific asserts that there are basically three types of crossings it provides. First, there are private road crossings, for use by individual landowners. Second are commercial road crossings, granted to businesses (and their invitees) which are located across railroad tracks from a roadway. And third, there are contractors' crossings for the limited use of contractors to get across railroad track to perform work on properties.

3. A sluice is a channel to drain or carry off surplus water. *Webster's Ninth New Collegiate Dictionary* (1987).

future loss of profits in the amount of $175,000.

The appellees filed a motion for the court to disregard the jury's DTPA findings on various grounds.[4] The trial court entered judgment on the verdict, but added the following to the judgment order: "The Court finds that the Plaintiffs' claims based on the Deceptive Trade Practices Act are barred by the statute of frauds. The Court therefore finds that the jury's answers to questions 4.A(b), 4.A.(c) and 8. should be disregarded."

## DTPA CLAIMS

Because there are various errors alleged to have been made by the trial court with regard to the DTPA claims, we will address them together. Appellants contest the application of the statute of frauds as a bar to their DTPA claims, and the court's decision to disregard DTPA-related findings on damages, attorneys' fees, and prejudgment interest. Appellees contest the legal and factual sufficiency of the evidence to support the DTPA claims.

In the first point of error, appellants claim the trial court erred when it disregarded the DTPA findings and ruled instead that the statute of frauds barred those claims. Appellees respond that a crossing is an interest in land which needs to be in writing, and that because the DTPA cause of action had as its "nucleus" an unenforceable oral contract, it should be barred. Appellees also allege that the court was correct in setting aside the jury findings because there was no evidence, or insufficient evidence, to illustrate that appellees violated the DTPA, or that any of their actions were a producing cause of actual damages to the appellants. We agree that the court correctly disregarded the DTPA findings, but for reasons other than the application of the statute of frauds.

▬ A motion to disregard jury findings should only be granted in two situations: 1) when the jury finding is unsupported by evidence, or 2) when an issue is immaterial.

*Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). A question is considered immaterial when 1) it should not have been submitted, or 2) when it was properly submitted, but has since been rendered immaterial by other findings. *Id.* If jury findings render other findings immaterial, then the trial court may properly disregard them; otherwise, the trial court has no authority to disregard them and commits reversible error in so doing. *See Waters v. Bruner,* 355 S.W.2d 230, 232 (Tex.Civ.App.— San Antonio 1962, writ ref'd n.r.e.). An appellate court reviewing a trial court's granting of a motion to disregard jury findings must consider all testimony in a light most favorable to the verdict, indulging every reasonable inference in its favor. *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986). As long as there is some evidence to support the disregarded finding, the reviewing court must reverse and render judgment. *Basin Operating Co. v. Valley Steel Prods.,* 620 S.W.2d 773, 776 (Tex.Civ. App.—Beaumont 1981, writ ref'd n.r.e.).

The appellees maintain, both in their motion to disregard the jury findings and in their brief, that there was no evidence, or insufficient evidence, to find that the railroad company either 1) caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, or 2) misrepresented the authority of its agent to negotiate the final terms of a consumer transaction. They also claim that appellants were not consumers, and therefore did not have standing under the DTPA to sue. Finally, they assert that appellants failed to produce any evidence that any alleged misrepresentations or confusion were a producing cause of actual damages, and that the appellants did not prove lost profits to a legally sufficient degree of certainty.

▬ The appellees preserved their complaints regarding the legal sufficiency of the evidence by filing their motion to disregard the jury findings prior to the entry of the

---

**4.** Appellees argued in the motion that there was no evidence that the railroad company engaged in any unconscionable actions, misrepresented the authority of its agents, or caused confusion as to the source, or sponsorship of its services. They also argued that there was no probative evidence that any actions were a producing cause of damages, that plaintiffs did not prove lost profits, and that plaintiffs were not entitled to attorneys' fees.

judgment. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 220 (Tex.1992); *Villalpando v. De La Garza,* 793 S.W.2d 274, 277 (Tex.App.—Corpus Christi 1990, no writ). However, we will not consider the appellees' claims that the evidence was factually insufficient to support the findings, because the trial court may only disregard the findings if they are not supported by *legally* sufficient evidence. *Spencer,* 876 S.W.2d at 157.

In reviewing a "no evidence" point, we must consider only the evidence and reasonable inferences therefrom which tend to support the jury findings, disregarding all contrary evidence and inferences. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989); *Smith v. Herco, Inc.,* 900 S.W.2d 852, 857–58 (Tex. App.—Corpus Christi 1995, writ denied). We overrule the point and uphold the finding if we find any evidence to support the finding. *Southern States Trans., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989); *Herco,* 900 S.W.2d at 858. However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

### CONSUMER STATUS

We first address the appellant's standing to bring suit under the DTPA. In order to have standing to sue under the DTPA, a party must be a consumer. A consumer is defined in the statute as a person who seeks or acquires by purchase or lease a good or a service, and the good or service must form the basis of the complaint. TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). Whether or not a person is a consumer is to be determined by the trial court from the evidence presented. *Commercial Escrow v. Rockport Rebel,* 778 S.W.2d 532, 536 (Tex.App.—Corpus Christi 1989, writ denied). A plaintiff's standing under the DTPA is established by viewing its relationship to the transaction in which liability accrues, and not necessarily by focusing on a contractual relationship with the defendant. *Cameron v.*

*Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex. 1981); *Commercial Escrow,* 778 S.W.2d at 536.

Appellants argue that they viewed all of their dealings with the appellees with a singular goal in mind: obtaining a crossing for their use. Initially, they presented evidence that they transacted with Sandefer to obtain the crossing, giving up their right to have Sandefer clean the property after closing the well. In so doing, they gave valuable consideration, and notified appellees of their desire to continue using the crossing. They sought the railroad's grant of the crossing, the rights to which they had purchased from Sandefer. Once appellees disassembled the crossing, appellants again sought to obtain a crossing by writing several letters to appellees, which were presented as evidence to the jury. The fact that appellants did not enter a written agreement with the appellees does not jeopardize their standing. We find that there was more than a scintilla of evidence to support a conclusion that appellants were consumers, and therefore, the court did not err in submitting the DTPA questions to the jury, nor should it have disregarded the jury findings on this basis.

### DAMAGES

We next address the damages alleged under the DTPA claims. The appellants sought recovery of past and future lost profits. Appellants claimed if the Sandefer crossing had remained in place, they would hade subdivided their property for considerable profit, but that the appellees' wrongful act of destroying the crossing precluded any possible subdivision. Appellants alleged that the misrepresentations and unconscionable actions of the appellees, both before and after the Sandefer crossing was removed, cost them lost profits because they prevented appellants from securing a second crossing by other means. They claimed that the hardship and psychological effects of not having a crossing on the east side of their property, approximately a mile and a half from the crossing on the opposite end, have prevented them from selling their property for this purpose. Appellees counter that appellants did not prove any damages which

resulted from any of the alleged DTPA violations. Appellees insisted in their motion to disregard the jury findings that appellants' proof of lost profits was too speculative to constitute legally sufficient evidence, and that they did not allege any other damages which they may recover. The appellees allege that appellants did not provide any probative evidence that any alleged misrepresentations, confusion, or unconscionable actions on the part of the appellees were the producing cause of any damages.

 In order to recover under the DTPA, a complaining party must establish that the defendant's actions were a producing cause of actual damages. TEX.BUS. & COM. CODE ANN. § 17.50(a) (Vernon 1987);[5] *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987). This requires a showing that the action was a cause-in-fact of the plaintiff's damages. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 167 (Tex.1995) (Cornyn, J., concurring). In order to meet its burden, an aggrieved party must include proof that an action "was a substantial factor in bringing about the injury and without which no harm would have occurred." *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980). Before we analyze the producing cause issue, we must first examine the evidence offered on the profits which the appellants claim to have lost, and the jury findings on damages.

 While recovery of lost profits does not require a loss susceptible to exact calculation, the amount of the loss must be shown by competent evidence, with reasonable certainty. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994) (per curiam); *Texas Instruments, Inc. v. Teletron Energy Management, Inc.*, 877 S.W.2d 276, 279 (Tex.1994). What constitutes reasonably certain evidence is a fact intensive determination. *Szczepanik*, 883 S.W.2d at 649. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained. *Id.; Holt Atherton*

*Ind., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). If a party chooses a particular method of measuring its lost profits, it must provide a complete calculation. *Holt*, 835 S.W.2d at 85. Mere speculation by the plaintiff does not constitute objective information. *Id.* at 84; *Holland v. Hayden*, 901 S.W.2d 763, 766 (Tex.App.—Houston [14th Dist.] 1995, writ. ref'd); *see Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 259 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (the award of damages based upon speculation cannot be upheld on appeal). Moreover, profits which are largely speculative, as from an activity dependent on uncertain or changing market conditions, or chancy business opportunities, may not be recovered. *Texas Instruments*, 877 S.W.2d at 279.

Thedford, who had been designated an expert on real estate values, testified about the effects on his property of the railroad's failure to provide a crossing on the eastern side of his property. To illustrate his experience and knowledge, Thedford stated that he had owned real estate businesses in the past, and had subdivided other properties. He testified that he could have subdivided the property if the Sandefer crossing had remained in place. He stated his opinion that the diminution in the value of 506 acres of his property attributable to the lack of a crossing on the eastern side of the property was between "$1500 to $2000 per acre," and that a minimum estimate of his lost profits was $736,-400. In order to reach this estimate, Thedford used the following calculations: 506.492 total affected acres − (minus) 25.492 acres used for roads = 481 acres to be sold in small tracts, average gross of $2500/acre. Gross profit of $1,102,500, − (minus) $60,000 in costs of building roads = $1,040,000. He then calculated the difference between net value after subdivision ($1,040,000), and the present value ($303,600), to arrive at the $736,400 figure. He did not testify or provide documentation as to any lost contracts or sales, or any debts incurred as a result of the appellees' actions or misrepresentations. He did not state a factual basis upon which

---

5. The legislature amended section 17.50(a) in 1995, and it now specifies that a consumer may bring a DTPA action where any of the listed acts in the DTPA constitute a producing cause of "economic damages or damages for mental anguish." Acts 1995, 74th Leg., ch. 414, § 5, eff. Sept. 1, 1995. This cause of action arose prior to the revision, however.

he ascertained the ascribed market value of his property with or without a second crossing.

Harry Norris, designated as an expert in real estate, also testified about the value of appellants' property with and without a second crossing on the east side. Norris stated he had a "small amount of experience in rural subdivisions," and that he had done real estate appraisal in the past. Norris said he appraised appellants' property by driving around on it for approximately three hours, and concluded that the highest and best use of the property without a crossing was for ranching and agriculture, but that the highest and best use with a second crossing would be as rural subdivisions. He stated that the property was suitable for rural subdivisions because of its trees, proximity to a creek and a roadway, as well as its proximity to an industrial factory. He testified further that the absence of a second crossing diminishes its value for these purposes.

When asked to quantify the difference in property value with and without a second crossing, Norris stated "not less than $500 an acre." In reaching his appraisal of the value of the property, Norris admitted that he did not perform any comparative market analysis with other specific properties in the county. He stated, "I didn't go into an in-depth study of this tract versus many, many [sic]; but due to my knowledge of the real estate market, I was able to arrive at a value in my mind, yes, sir, that I thought would be a fair market value." Norris did not provide any substantial, objective basis for reaching his conclusions other than his general experience.

At the conclusion of the evidence, the jury was presented with two damages questions, the first based on appellants' negligence claim, and the second based on their DTPA claims. In Question 7, it was asked to calculate the difference between the present market value of the 506 acre tract with a second crossing and its present market value without a second crossing. It answered this question "None," and thereby rejected the market value estimates of both Thedford and Norris. In Question 8, the jury was asked to calculate what damages the appellants suf-

fered in terms of any past or future lost profits as a result of the DTPA violations. The jury answered $175,000.00.

An owner of property is qualified to testify about the market value of his property. *Redman Homes, Inc. v. Ivy,* 39 Tex. Sup.Ct.J. 481, 484, 920 S.W.2d 664 (1995); *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex. 1981). However, such testimony must show that it refers to his knowledge of the market value, and is not merely based on his opinion as to its intrinsic or some other value. *Redman,* 39 Tex.Sup.Ct.J. at 484; *Porras,* 675 S.W.2d at 504–05. The record is devoid of any substantive market analysis to substantiate Thedford and Norris's calculations. Nonetheless, Thedford's real estate experience, combined with his assertions that he is familiar with market value of property in the area does constitute admissible evidence of his property's current value. *See · Porras,* 675 S.W.2d at 505; *see also Krenek v. South Texas Elec. Coop., Inc.,* 502 S.W.2d 605, 609 (Tex.Civ.App.—Corpus Christi 1973, n.w.h.). The jury chose, however, to reject the testimony of both Thedford and Norris regarding the alleged difference in present market value with and without the second crossing. In so doing, the jury implicitly rejected Thedford's calculation of lost profits based on the diminution in market value of the appellants' property. They determined that the absence of a second crossing had no effect on the market value of the appellants' property. Thus, we must determine whether there was any other basis upon which to award $175,000 in past or future lost profits.

In determining whether the appellants presented legally sufficient evidence to support a jury award of $175,000 in lost profits, an analogy can be made to the Texas cases analyzing lost profits claimed by new or unestablished businesses. In the past, new or unestablished businesses were categorically denied recovery of lost profits under the "new business rule," which held that such profits could not be calculated with any degree of certainty. *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938). However, this *per se* rule of exclusion recently has been abandoned by the courts in favor of a rule allowing recov-

ery for new or unestablished businesses when lost profits are proven to a reasonable degree of certainty through competent evidence. *See Texas Instruments, Inc.,* 877 S.W.2d at 280; *Orchid Software, Inc. v. Prentice–Hall, Inc.,* 804 S.W.2d 208, 210 (Tex.App.—Austin 1991, writ denied); *Peña v. Ludwig,* 766 S.W.2d 298, 301 (Tex.App.—Waco 1989, no writ). The focus for new or unestablished businesses is on the experience of the persons involved in the enterprise, the nature of the business activity, and the relevant market. *Texas Instruments, Inc.,* 877 S.W.2d at 280.

In this case, the appellants had not yet sold or subdivided the property when the second crossing was disassembled. That fact does not by itself provide a basis for denying recovery of loss of future profits. However, as the supreme court stated in *Texas Instruments,*

> "the mere hope for success of an untried enterprise, even when that hope is realistic, is not enough for recovery of lost profits. When there are firmer reasons to expect a business to yield a profit, the enterprise is not prohibited from recovering merely because it is new."

*Texas Instruments,* 877 S.W.2d at 280.

In *Texas Instruments,* the supreme court considered the lost profit claims of a new business with unestablished products, and held that the expectations of profits were "at best hopeful," and unsupported by the evidence because the claims involved the sale of new and unique products never before sold. *Texas Instruments,* 877 S.W.2d at 280. Similarly, in *Holt,* the court found the evidence of lost profits legally insufficient where plaintiffs estimated an amount of lost profits, but did not provide supporting evidence to substantiate their estimate. *Holt,* 835 S.W.2d at 85. The court went on to mention that the plaintiffs could have supported their claim of lost profits with evidence of how they lost out on specific contracts as a result of the defendant's actions, but they failed to do so. *Id.* In dismissing their testimony, the court stated "the bare assertion that contracts were lost does not demonstrate reasonably certain evidence." *Id.*

In this case, appellants' evidence on lost profits essentially consisted of the general knowledge of two experts, one of which was the plaintiff, who concluded that the appellants could not use their property in its most profitable manner, as rural subdivisions. Besides the alleged difference in market value, there was no other evidence supporting a lost profits finding based on the DTPA claims. Appellants failed to present any evidence of lost sales or contracts, either in the past or future, resulting from the destruction of the second crossing. While such evidence is not required, it would lend needed support to the ballpark appraisals provided by Thedford and Norris. Although it is not an absolute requirement that evidence of lost profits be supported by documentation, *Id.; Peña,* 766 S.W.2d at 304, we conclude that testimony about lost profits must at least be based upon some factual data. *See, e.g. Szczepanik,* 883 S.W.2d at 650 (testimony as to expected profits without evidence substantiating it is legally insufficient).

We conclude that, because the appellants did not provide any evidence to substantiate their estimates of lost profits, either through documents, or by reference to lost contracts, sales, or existing market data, the evidence presented to the jury was legally insufficient to support its finding of $175,000 in lost profits. The evidence presented on lost profits was no different than the evidence on the diminution in market value. The jury found that there had been no diminution in market value. In the absence of any other objective evidence of lost contracts or sales, there are no facts from which a reasonably certain determination of lost profits could be made. The court was correct in disregarding its findings on damages in question 8.

Lost profits were the only damages alleged by the appellants in their DTPA claims, and were the only damages submitted to the jury under this cause of action. In the absence of legally sufficient evidence of actual damages, there is no viable DTPA action. Accordingly, we conclude that the trial court was correct in disregarding the jury findings on all DTPA questions because the appellants did not present evidence on an essential element of recovery under the DTPA: that

the actions of the defendants were a producing cause of *actual damages.* TEX.BUS. & COM.CODE ANN. § 17.50(a) (Vernon 1987). Because each of the appellants' DTPA claims require proof of actual damages, which they did not provide, we need not address the issue of whether or not the appellees' actions amounted to specific violations under the DTPA, or whether appellants' claims were barred by the statute of frauds. Point one is overruled because the DTPA findings were not supported by legally sufficient evidence on damages, and therefore, they were properly disregarded.

Appellees contend in their second crosspoint that the trial court erred by not disregarding the jury's finding that the appellees engaged in an unconscionable course of action which was a producing cause of damages to appellants. We agree, for the reasons discussed above. The appellants did not present legally sufficient evidence on damages incurred or profits lost as a result of the appellees' unconscionable actions. The court properly struck the jury finding on question 8 of $175,000, which was based in part on its affirmative finding that appellees engaged in an unconscionable course of action. We conclude that the absence of evidence on actual damages bars recovery under all DTPA claims. Because the appellants failed to produce evidence of lost profits, the court should have disregarded the jury's answer to question 3.A. Appellees' second crosspoint is sustained.

By their second point of error, appellants claim that the trial court erred in denying their recovery of damages, attorneys' fees, and pre-judgment interest. Of the various causes of action alleged, the jury only found in favor of the appellants on two grounds: 1) the railroad's violations of the statute on sluices,[6] and 2) the DTPA claims. Of those two causes of action, attorneys' fees are recoverable only when the consumer prevails on the DTPA cause of action. TEX.BUS. & COM.CODE ANN. § 17.50(d) (Vernon 1987). The trial court disregarded the jury findings on the DTPA claims, thereby setting aside the award of attorneys' fees. Because we

agree with the trial court that the jury findings were properly disregarded, we conclude that there is no basis upon which appellants may recover attorneys' fees. We have already addressed the insufficiency of the evidence on actual damages, and therefore, we affirm the trial court's decision to disallow recovery of any damages under the DTPA, including any prejudgment interest. Appellants' second point of error is overruled.

In their third point, appellants allege that the trial court erred in failing to give an instructed verdict on their claim that they were entitled to a statutory crossing pursuant to articles 6321 and 6322 of the Texas Civil Statutes at the conclusion of all evidence. Both the appellants and the appellees moved for a directed verdict on this issue at the close of the evidence by written motion. At the hearing, the parties presented contradictory interpretations of the statute, and contrasting views of the requirements of the statutory crossing "demand" letter. The court denied both motions, holding that fact issues existed as to whether the appellants gave the railroad notice of where they wanted a crossing, when they wanted it, and whether there was a crossing within one-and-a-half miles.

A directed verdict is proper when 1) a defect in the opponent's pleadings makes them insufficient to support a judgment, 2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or 3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). Ordinarily, the overruling of a motion for directed verdict may be reviewed on appeal only if it was recited in a formal order or in the judgment. *Soto v. Southern Life & Health Ins. Co.,* 776 S.W.2d 752, 754 (Tex.App.—Corpus Christi 1989, no writ); *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 590 (Tex.App.—Texarkana 1992, writ denied); *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 145 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Steed v. Bost,* 602 S.W.2d 385,

---

6. TEX.REV.CIV.STAT.ANN. art. 6328 (Vernon 1926).

387 (Tex.Civ.App.—Austin 1980, no writ); *cf.* (Justice Cohen's concurrence in *Sipco Services Marine, Inc. v. Wyatt Field Service Co.*, 857 S.W.2d 602, 608 (Tex.App.—Houston [1st Dist.] 1993, no writ)). However, error regarding the legal and factual sufficiency of the evidence may be preserved by filing a motion for a new trial. *Wal–Mart*, 833 S.W.2d at 590. In this case, the court made an oral ruling denying appellants' motion. Although the court did not enter a formal order, or mention its decision in the judgment, we may still consider the appellants' arguments based on the reference to the alleged errors made by the court on this issue in their motion for new trial. Appellants stated in their motion that the court erred by not granting a directed verdict on this point. We construe this as a challenge to legal sufficiency of the evidence presented by the appellees.

With regard to the evidence presented at the trial, the appellants introduced a letter Thedford had written to the railroad, dated September 30, 1985, indicating his desire to obtain the Sandefer crossing. At the time, the Sandefer crossing was still in place, and Thedford's correspondence to the appellees did not refer to any statutory right to a crossing, nor did it meet the specific requirements of the notice letter as set out in article 6322.

In Thedford's letter dated October 28, 1987, which appellants indicate met the requirements of article 6322, he did not specifically state when or where the appellants wanted a crossing. Appellants argue on appeal, however, that those issues are obvious when the entire record is surveyed (*i.e.*, that it was obvious they were referring to the Sandefer crossing, which the railroad company had just removed). Contrary to the assertions of the appellants, Missouri–Pacific presented the testimony of its former employees in the crossing division that they never received any letters prior to the October 28, 1987 letter. They also allege that the October 28 letter did not meet the requirements of the statute, and therefore no directed verdict could be granted to appellants.

■ There is very little caselaw interpreting this article, and we found none pertaining to a situation such as this, where a crossing had been in place, but was removed, and subsequently sought after again by a landowner. Article 6321 sets out when crossings are required: "public crossings" may be required at least every one-and-a-half miles, and at least one "private crossing" between divided, enclosed property is required when necessary. Tex.Rev.Civ.Stat. Ann. art. 6321 (Vernon 1926). Article 6322, titled "Where Made," was drafted to spell out how notice would be provided to the railroads that a private crossing was requested. Tex. Rev.Civ.Stat.Ann. art. 6322 (Vernon 1926). Given its plain language, and the purposes of the articles preceding and following it, we can assume that article 6322 was drafted for those instances when crossings were not in existence, but were needed. Naturally, the railroads would need to be put on notice as to when and where crossings were required, and by whom.

We conclude that the essential purpose of article 6322 is to provide notice to the railroads, and the observance of its terms is necessary to comply with the statute. Both parties presented contradictory evidence as to the notice provided by the appellants. Clearly, neither one of Thedford's letters met the literal requirements of the statute. Moreover, appellees claim to have never even received the first letter, and they contest the form of the October 28, 1987 letter. Therefore, a fact issue existed as to whether the appellees received the requisite notice. We find that the trial court was correct in submitting these issues to the jury to decide, as a material issue regarding appellants' notice arose which precluded the granting of a directed verdict. *See Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). Appellants' third point is overruled.

In their fourth and fifth points of error, respectively, appellants allege the court erred by not presenting to the jury questions of whether appellees gave undue or unreasonable preference to others in allocating crossings, and whether the railroad company violated a duty of good faith and fair dealing.

■ The trial court shall submit to the jury those questions which are raised by the

written pleadings and the evidence. TEX. R.CIV.P. 278. The supreme court has determined that a judgment must be reversed when the trial court refuses to submit a question on a valid theory of recovery "as long as matters are timely raised and properly requested as part of the court's charge." *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex.1992).

■ Appellants contend in point four that appellees violated articles 6474 and 6559i–4 of the Texas Civil Statutes by constructing a crossing on the property of their neighbor, although the neighbor had less frontage footage than appellants. Appellants further contend that it was reversible error for the trial court to not submit this issue to the jury. Appellees counter that articles 6474 and 6559i–4 are inapposite to appellants' claims, and therefore were properly excluded from the jury's consideration.

■ Appellants did allege discrimination in their third amended petition, alleging violations of articles 6474 and 6559i–4 of Texas Civil Statutes. However, the facts recited in the pleadings and the evidence developed at trial do not raise any issues which would invoke these statutes. While the issue of what is unjust discrimination is usually a fact question to be determined by the jury, it becomes a question of law for the courts to decide without submitting it to the jury when the facts are undisputed and lead to but one reasonable conclusion. *Ft. Worth & D.C. Ry. Co. v. Frazier*, 191 S.W. 808, 814 (Tex.Civ. App.—Ft. Worth 1917, no writ.).

Appellants rely on *San Antonio & A.P. Ry. Co. v. Grier*, 20 Tex.Civ.App. 138, 49 S.W. 148 (1898), for the proposition that the failure to provide a crossing required by law can form the basis of an action based on unjust discrimination. In *Grier*, the supreme court held that a court should allow a party to testify that its neighbors had openings through the railroad, while it had no openings of its own, holding that such testimony was competent as tending to show discrimination and as bearing upon the question of exemplary damages. *Grier*, 49 S.W. at 149. However, *Grier* is distinguishable on several grounds. First, the applicable law was different, as *Grier* did not invoke either article

6474 or 6559i–4, but instead was a gross negligence action seeking exemplary damages. Second, the court held that such testimony should not be excluded at trial because it had probative value on the question of exemplary damages. There is no allegation in this case that any testimony regarding unjust discrimination was excluded. Finally, the facts of that case which warranted testimony on this issue are substantially different. The complainant in *Grier* did not even have one crossing, as it was statutorily obligated to receive, as a result of the railroad's fencing its right of way. The discrimination at issue there involved the total denial of access over the tracks dividing plaintiff's property. In this case, it is uncontroverted that appellants already have one crossing and are seeking a second crossing. Their entitlement to a second crossing is much less compelling because they have not been denied access between lots.

The meaning of article 6474(1) must be ascertained by reading it in its entirety.

Unjust discrimination is hereby prohibited and the following acts or either of them shall constitute unjust discrimination.

1. If any railroad subject hereto, directly or indirectly, or by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, or shall give any undue or unreasonable preference or advantage to any particular person, firm or corporation, or locality or to subject any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever.

TEX.REV.CIV.STAT.ANN. art. 6474(1) (Vernon 1926). The statute apparently intends to prevent railroads from discriminating between persons, companies, or localities in their rates for services. It is unjust discrimination to charge one person more than another for the same service, and conversely, it

is discrimination to charge one person less than another for the equivalent service. In this case, appellants did not present evidence that the appellees attempted to charge them any more than their neighbor was charged for the "service" of installing a crossing. In fact, the parties never even reached the point of discussing the costs of the crossing.

▉ Appellants have cited no authority, and we find none, where articles 6474 or 6559i–4 have been used to sue a railroad company for unjust discrimination for not providing a second crossing to a property owner, despite providing a second crossing to that property owner's neighbors. Appellants do not complain that they do not have access from one side of their property to another, but rather, that their crossing point is not at a convenient enough location.[7] The statute granting private crossings only ensures that eligible landowners obtain at least one crossing. As the commission of appeals stated in construing the crossing statute, "it has never been the policy of the law to award individuals every convenience at the expense of the rights of their neighbors." *Hines*, 248 S.W. at 340. There is no evidence that the provision of a crossing on the neighbors's property unduly or unfairly prejudiced any rights of the appellants in contravention of these statutes.

▉ Moreover, given the fact that article 6559i–4 is penal in nature,[8] we will strictly construe the terms of the statute and resolve any doubt as to the intention of the legislature in favor of the defendant. *Frazier*, 191 S.W. at 811; *Houston, E. & W.T. Ry. Co. v. Campbell*, 91 Tex. 551, 45 S.W. 2 (1898); *Gulf, C. & S.F. Ry. Co. v. Dwyer*, 84 Tex. 194, 19 S.W. 470 (1892). We do not find error in the trial court's refusal to submit these issues to the jury. Appellants' fourth point is overruled.

▉ Appellants' fifth point contends that the extraordinary powers of the railroad to exercise eminent domain, among other pow-

ers, create a special relationship between railroads and landowners, and that the trial court erred by not submitting the good faith and fair dealing issue to the jury. Appellants cite no caselaw supporting their position that railroads owe a duty of good faith and fair dealing to landowners.

It is true that landowners are relatively powerless to prevent railroads from laying tracks where necessary. However, articles 6321 and 6322 set out procedures whereby landowners can compel railroads to grant necessary crossings. The procedures by which these crossings are allocated are statutorily mandated, and are not left to the discretion or bargaining of the parties through contract. Therefore, the rationale for imposing a heightened duty on railroads in this context is much less compelling than in the insurance context, for example, where one party, because of a sheer disparity in bargaining power, essentially sets all the terms of the agreement. *See Arnold v. National Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Accordingly, we do not find that the court's refusal to submit this issue to the jury constitutes error.

Having overruled all of the appellants' points of error, affirm the judgment of the trial court. However, we order the judgment to be reformed to reflect that the DTPA findings are disregarded because there was no probative evidence presented that the appellants suffered any actual damages. The judgment should also be modified to disregard the jury's answer to question 3.A. on the same grounds. AFFIRMED as modified.

▉

---

7. Although the appellants did provide testimony regarding the adequacy of their existing crossing, and whether it complies with the statutory requirements, that issue is separate from those raised on appeal, and is not presented to this court to determine.

8. Article 6559i–4, which was transferred from the Penal Code in 1973, provides that any person who violates its conditions "shall be confined in the penitentiary not less than two or more than five years." TEX.REV.CIV.STAT.ANN. art. 6559i–4 (Supp.1996).